UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

WILLIAM L. HUNTRESS AND ACQUEST          :
DEVELOPMENT, LLC.,                        :
                                          :
                      Plaintiffs,         :
                                          :    18 Civ. 2974 (JPO)
            v.                            :
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
                      Defendant.          :
                                          :
-------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
THE COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)**


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2725
Facsimile: (212) 637-2702

CHARLES S. JACOB
Assistant United States Attorney
      – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………......…....1

BACKGROUND……………………………………………... …………………….2

    A.  Prior Criminal and Civil Actions Brought by the United States Against Huntress and His Companies………………………………..……………………......................2

    B.  Plaintiffs' Prior Civil Actions against the United States and Federal Employees...….…4

    C.  The Complaint……………………………………………………………....…...5

ARGUMENT……………………………………………………….……………….....6

    A.  The Court Lacks Subject Matter Jurisdiction Over This Action………………………...7

        a.  Legal Standard Governing Dismissal Pursuant To Rule 12(b)(1) Of The Federal Rules Of Civil Procedure………………………………………………………...7

        b.  The FTCA's Discretionary Function Exception Bars All of Plaintiffs' Claims....7

        c.  The FTCA's Intentional Tort Exception Bars All of Plaintiffs' Claims………..11

    B.  Plaintiffs Fail to State a Claim……………………………...……………………….13

        a.  Legal Standard Governing Dismissal Pursuant To Rule 12(b)(6) Of The Federal Rules Of Civil Procedure………………………………………...…………….13

        b.  Plaintiffs' Claims Regarding the First Criminal Action Are Untimely…………14

        c.  Plaintiffs Fail to Sufficiently Plead a Malicious Prosecution Claim……..…….15

            i.  Neither Criminal Action Terminated in Plaintiffs' Favor………...…….15

            ii.  Plaintiffs Fail to Plead That Either Criminal Action Lacked Probable Cause…………………...…………………………………………….....16

            iii.  Plaintiffs Have Not Pled Facts Sufficient to Show That Any Federal Employees Acted with Actual Malice………...………………………...20

        d.  Plaintiffs Fail to State an Abuse-of-Process Claim…………….…………….....21

        e.  Plaintiffs Fail to State an IIED Claim……………..………………………....…23

        f.  Plaintiffs Fail to State a Civil Conspiracy Claim…………...…………………..24

CONCLUSION…………………………………………………….……………….....25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Acquest Wehrle LLC v. United States*,
  567 F. Supp. 2d 402 (W.D.N.Y. 2008) ................................................................ 4

*ACR Sys., Inc. v. Woori Bank*,
  No. 14-cv-2817 (JFK), 2018 WL 1757019 (S.D.N.Y. Apr. 10, 2018) ................. 24

*Alcantara v. City of New York*,
  646 F. Supp. 2d 449 (S.D.N.Y. 2009) ................................................................ 12

*Anderson v. Rochester–Genesee Reg'l Transp. Auth.*,
  337 F.3d 201 (2d Cir.2003) .................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 13, 14

*Berkovitz v. United States*,
  486 U.S. 531 (1988) ............................................................................................ 8

*Bernard v. United States*,
  25 F.3d. 98 (2d Cir. 1994) ............................................................................ 11, 21

*Berrio v. City of New York*,
  No. 15-cv-09570 (ALC), 2017 WL 118024 (S.D.N.Y. Jan. 10, 2017) ............... 23

*Blount v. Moccia*,
  No. 16-cv-4505 (GHW), 2017 WL 5634680 (S.D.N.Y. Nov. 21, 2017) ............. 17

*Bowling v. United States*,
  740 F. Supp. 2d 1240 (D. Kan. 2010) ............................................................... 24

*Breen v. Garrison*,
  169 F.3d 152 (2d Cir.1999) ............................................................................... 15

*Burnette v. Carothers*,
  192 F.3d 52 (2d Cir. 1999) ................................................................................ 13

*C.D. of NYC, Inc. v. U.S. Postal Serv.*,
  No. 03-cv-5055 (JFK), 2004 WL 2072032 (S.D.N.Y. Sept. 16, 2004) .............. 24

*Caban v. United States*,
  671 F.2d 1230 (2d Cir. 1982) .............................................................................. 8

*Caronia v. Orphan Med., Inc.*,
  643 Fed. Appx 61 (2d Cir. 2016) ....................................................................... 14

*Caronia v. United States*,
   No. 13-cv-5758 (FB) (LB), 2015 WL 4872558 (E.D.N.Y. Aug. 13, 2015) ........................... 14

*Cook v. Sheldon*,
   41 F.3d 73 (2d Cir. 1994) ...................................................................................... 21

*Coulthurst v. United States*,
   214 F.3d 106 (2d Cir. 2000) ..................................................................................... 8

*DiBlasio v. City of New York*,
   102 F.3d 654 (2d Cir.1996) ..................................................................................... 14

*Dorking Genetics v. United States*,
   76 F.3d 1261 (2d Cir. 1996) .................................................................................... 13

*Fisk v. Letterman*,
   424 F.Supp. 2d 670 (S.D.N.Y. 2006) ........................................................................ 24

*Freihofer v. Hearst Corp.*,
   65 N.Y.2d 135 (1985) .............................................................................................. 23

*Fulton v. Robinson*,
   289 F.3d 188 (2d Cir. 2002) .................................................................................... 16

*Fusco v. Cty. of Putnam, New York*,
   No. 15-cv-08132 (NSR), 2018 WL 1889070 (S.D.N.Y. Apr. 18, 2018) ............................ 23

*United States v. Gaubert*,
   499 U.S. 315 (1991) ................................................................................................. 8

*Gertskis v. U.S. E.E.O.C.*,
   No. 11-cv-5830, 2013 WL 1148924 (S.D.N.Y. Mar. 20, 2013) ...................................... 2

*Gilman v. Marsh & McLennan Cos.*,
   654 F. Appx 16 (2d Cir. 2016) ................................................................................. 22

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) .................................................................................... 13

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ............................................................................................... 21

*Huntress v. U.S. Dep't of Justice*,
   No. 12-cv-1146, 2013 WL 2297076 (W.D.N.Y. May 24, 2013) ...................................... 5

*In re Joint Eastern and Southern Dists. Asbestos Litigation*,
   891 F.2d 31 (2d Cir. 1989) .................................................................................. 8, 13

*In re World Trade Center Disaster Site Litig.*,
   521 F.3d 169 (2d Cir. 2008).............................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 12, 13

*Jackson v. City of New York*, ,
   No. 01-cv-10116 (RCC), 2005 WL 1538205 (S.D.N.Y. June 29, 2005) ................................ 16

*K.W. Thompson Tool Co., Inc. v. United States*,
   836 F.2d 721 (1st Cir. 1988)............................................................................ 10

*Liranzo v. United States*,
   690 F.3d 78 (2d Cir. 2012)............................................................................. 15

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)............................................................................. 7

*Manganiello v. City of N.Y.*,
   612 F.3d 149 (2d Cir. 2010)............................................................................ 15

*Marino v. Jonke*,
   No. 11–cv–430 (VB), 2012 WL 1871623 (S.D.N.Y. Mar.30, 2012) .................................... 16

*Martin v. City of Albany*,
   42 N.Y. 2d 13 (1977).................................................................................. 20

*Martinez v. City of Schenectady*,
   97 N.Y.2d 78 (2001) .................................................................................. 16

*McClellan v. Smith*,
   439 F.3d 137 (2d Cir. 2006)............................................................................ 18

*McKinney v. United States*,
   No. 17-1055, 2018 WL 618399 (10th Cir. Jan. 30, 2018)............................................ 24

*Moore v. Valder*,
   65 F.3d 189 (D.C.Cir. 1995)............................................................................. 9

*Morales v. United States*,
   No. 94-cv-4865 (JSR), 1997 WL 285002 (S.D.N.Y. May 29, 1997)..................................... 9

*Morrison v. Nat'l Australia Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008)............................................................................. 7

*O'Connell v. United States*,
   No. 15-cv-6512 (RJD) (RLM), 2017 WL 3701856 (E.D.N.Y. Aug. 25, 2017) .............. 8, 9, 10

*Peter L. Hoffman, Lotte, LLC v. Town of Southampton,*
 523 Fed. Appx 770 (2d Cir. 2013) ........................................................................ 22

*Quinoy v. Pena,*
 No. 13-cv-1945 (NSR), 2014 WL 1998239 (S.D.N.Y. May 14, 2014) ..................... 12

*Rapanos v. United States,*
 547 U.S. 715 (2006) ............................................................................................... 17

*Rothstein v. Carriere,*
 373 F.3d 275 (2d Cir. 2004) ............................................................................. 15, 16

*Rounseville v. Zahl,*
 13 F.3d 625 (2d Cir. 1994) ..................................................................................... 20

*Rutty v. Krimko,*
 No. 17-cv-6090 (BMC) (VMS), 2018 WL 1582290 (E.D.N.Y. Mar. 30, 2018) ...... 24

*Salmon v. Blesser,*
 802 F.3d 249 (2d Cir. 2015) ................................................................................... 23

*Savino v. City of New York,*
 331 F.3d 63 (2d Cir. 2003) ..................................................................................... 22

*Shapiro v. Goldman,*
 No. 14-cv-10119 (NRB), 2016 WL 4371741 (S.D.N.Y. Aug. 15, 2016)
 *aff'd* 696 Fed. Appx 532 (2d Cir. 2017) ............................................................ 21, 22

*Simone v. United States,*
 642 F. Appx 73 (2d Cir. 2016) .......................................................................... 11, 13

*Smith–Hunter v. Harvey,*
 95 N.Y.2d 191 (2000) ....................................................................................... 15, 16

*Sossamon v. Texas,*
 563 U.S. 277 (2011) ................................................................................................. 7

*Syms v. Olin Corp.,*
 408 F.3d 95 (2d Cir. 2005) ..................................................................................... 14

*Turley v. ISG Lackawanna, Inc.,*
 774 F.3d 140 (2d Cir. 2014) ................................................................................... 23

*United States v. Acquest Development,*
 932 F. Supp. 2d 453 (W.D.N.Y. 2013) ............................................................ 3, 4, 16

*United States v. Acquest Transit,*
 2009 WL 2157005 (W.D.N.Y. July 15, 2009) .......................................................... 3

*United States v. Donovan*,
  661 F.3d 174 (3d Cir. 2011)................................................................. 17

*United States v. Huntress*,
  No. 1:13-cr-199 (WMS) (JJM), 2015 WL 631976 at *1 (W.D.N.Y. Feb. 13, 2015). 3, 4, 18, 19

*United States v. Lippold*,
  No. 06-cr-30002, 2007 WL 3232483 (C.D. Ill. Oct. 31, 2007) ............................... 20

*United States v. Lucas*,
  516 F.3d 316 (5th Cir. 2008) ............................................................... 20

*United States v. Robertson*,
  875 F.3d 1281 (9th Cir. 2017) .............................................................. 20

*United States v. Robison*,
  505 F.3d 1208 (11th Cir.2007) ............................................................. 17

*United States v. Rodriguez*,
  No. 9-cr-279, 2011 WL 1458231 (D. Idaho Apr. 15, 2011).................................... 20

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
  467 U.S. 797 (1984)........................................................................ 8

*United States v. Vaszquez*,
  145 F.3d 74 (2d Cir. 1998)................................................................. 2

*Valdez ex. rel Donely v. United States*,
  518 F.3d 173 (2d Cir.2008)................................................................. 14

*Valdez v. United States*,
  No. 08-cv-4424 (RPP), 2009 WL 2365549 (S.D.N.Y. July 31, 2009) ...................... 10

*Wang v. United States*,
  No. 01-cv-1326 (HB), 2001 WL 1297793 (S.D.N.Y. Oct. 25, 2001)
  *aff'd* 61 Fed. Appx 757 (2d. Cir. 2003) .......................................... 9, 10-11

*Wright v. Rutulante*,
  No. 16-cv-10068 (KMK), 2018 WL 1578172 (S.D.N.Y. Mar. 27, 2018).............................. 19

## Statutes

18 U.S.C. § 401 ............................................................................ 19
28 U.S.C. § 1346 ........................................................................... 24
28 U.S.C. § 2401 ........................................................................... 14
28 U.S.C. § 2680 ....................................................................... 11, 12
33 U.S.C. §1251 ............................................................................ 2

Defendant United States of America, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of the government's motion to dismiss the Complaint ("Compl.") (Dkt. No. 1) for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Through this Federal Tort Claims Act ("FTCA") action, Plaintiffs William L. Huntress ("Huntress") and Acquest Development, LLC ("Acquest Development") challenge two indictments brought against them and another Huntress-managed company, Acquest Transit, LLC ("Acquest Transit"), in the United States District Court for the Western District of New York (the "WDNY Court"). Prior to the first indictment, that Court held that there was probable cause for environmental crimes, but subsequently dismissed that indictment without prejudice. A grand jury returned a second indictment, and the WDNY Court found that there was no evidence that those charges were brought vindictively. Acquest Transit pled guilty to criminal contempt and, pursuant to a plea agreement, the government dismissed the indictment against Plaintiffs. Plaintiffs also sought relief from the indictments in the WDNY Court through FTCA and *Bivens* actions, but voluntarily dismissed their claims soon after the government filed a motion to dismiss.

Plaintiffs now try again here. The United States, however, has not waived sovereign immunity over any of Plaintiffs' claims. First, Plaintiffs complain about a quintessential discretionary decision—whether to prosecute—that is encompassed by the FTCA's discretionary function exception. Second, the FTCA's intentional tort exception, which bars any claims

against the government for certain enumerated torts and any others arising from the same, applies to all of Plaintiffs' claims.

Plaintiffs also fail to state claims for malicious prosecution, abuse of process, civil conspiracy, and intentional infliction of emotional distress ("IIED").  For example, the improper motivations assigned to Environmental Protection Agency ("EPA") officials do not plead actual malice.  Nor do the incidents alleged in the Complaint suggest that either indictment was procured in bad faith.  Last, Plaintiffs filed their administrative tort claim well-beyond the time period permitted for any claims arising out of the first criminal action.  For these reasons and others, the Court should be dismiss all of Plaintiffs' claims.

## **BACKGROUND**

### A.  **Prior Criminal and Civil Actions Brought by the United States Against Huntress and His Companies**

In January 2009, the United States brought a civil action under the Clean Water Act, 33 U.S.C. §1251 *et seq*. (the "CWA"), against Acquest Transit in the WDNY Court.  *See* Complaint, Dkt. No. 1, No. 09-cv-00055 (WMS) (LGF) (Jan. 15, 2009) (the "Transit Civil Action").[1]  The action sought injunctive relief and civil penalties for Acquest Transit's unpermitted discharge of fill material on certain property located on Transit Road in Amherst, New York (the "Transit Property").  *See id*.  The WDNY Court granted a preliminary injunction

---

[1] In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court may consider evidence outside the pleadings.  *United States v. Vaszquez,* 145 F.3d 74, 80 (2d Cir. 1998).  In reviewing a motion to dismiss under Rule 12(b)(6), a Court may consider documents of which it may take judicial notice, "including pleadings and prior decisions in related lawsuits."  *Gertskis v. U.S. E.E.O.C.*, No. 11-cv-5830, 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) (considering prior court decisions in reviewing a motion to dismiss because the case was "not the first round of litigation between Plaintiffs and Defendants.") (citing *Anderson v. Rochester–Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n. 4 (2d Cir.2003) (taking judicial notice of a related district court decision)).

sought by the government, and enjoined Acquest Transit, its officers, employees, and others from placing additional fill or performing any additional earthmoving work.  *See United States v. Acquest Transit*, 2009 WL 2157005 at *11 (W.D.N.Y. July 15, 2009) (granting injunction).

In July 2009, the Government filed a second CWA action (the "Wehrle Civil Action") against Plaintiffs and Acquest Wehrle, LLC, relating to unpermitted development work on a different property located on Wehrle Drive, also in Amherst, New York (the "Wehrle Property").  *See* Complaint, Dkt. No. 1, *United States v. Acquest Wehrle*, 9-cv-637 (LJV) (LGF) (W.D.N.Y. Jul. 14, 2009).  On November 9, 2011, a federal grand jury indicted Plaintiffs and Acquest Transit on seven counts: conspiracy, obstruction of justice, concealing material facts, false statements, criminal contempt, and two counts of unpermitted filling of wetlands under the CWA.  *See* Indictment, Dkt. No. 1, *United States v. Huntress et. al.*, 11-cr-347 (W.D.N.Y. Nov. 9, 2011).  The WDNY Court subsequently dismissed that indictment without prejudice.  *United States v. Acquest Development*, 932 F. Supp. 2d 453 (W.D.N.Y. 2013).  Specifically, the WDNY Court held that the grand jury's independence was compromised by the government's disclosure of that court's order that Acquest's general counsel testify before the grand jury and an accompanying judicial finding of probable cause that environmental crimes had been committed. *See id.*

A grand jury then returned a new indictment that charged Plaintiffs and Acquest Transit with the same crimes, excluding the CWA charges.  *See United States v. Huntress*, No. 1:13-cr-199 (WMS) (JJM), 2015 WL 631976 at *1 (W.D.N.Y. Feb. 13, 2015).  Plaintiffs and Acquest Transit moved to dismiss the indictment and claimed, among other things, that the site was "not subject to the CWA," and that they were the subject of a vindictive prosecution.  *Id.* at *7, 20-21. The WDNY Court denied the motion.  *Id.*  In doing so, the Court held that the "[i]ndictment

adequately allege[d] that the EPA had the authority to make the requisite inquiries underlying the charges asserted" and that there was no evidence that EPA or other government employees ever prevailed upon the criminal prosecution team to use the criminal proceedings for a benefit in the civil proceeding. *See Huntress*, 2015 WL 631976, at *4. The WDNY Court also observed that the Indictment did not allege any CWA violations. *Id.* at *2.

Acquest Transit pled guilty to the criminal contempt charge in the second indictment, and was sentenced to pay a $250,000 fine. *See* Plea Agreement and Judgment, Dkts. No. 77, 85, *United States v. Huntress*, No. 13-cr-199 (WMS) (JJM). In the plea agreement, Acquest Transit admitted that Huntress was its sole member and manager, and that Acquest Transit had willfully violated the WDNY Court's injunction in the Transit Civil Action by directing a farmer to perform "mechanized activities" at the site. *See id.* Pursuant to that agreement, the government agreed to dismiss the remaining open counts against Acquest, and to dismiss the indictment against Plaintiffs. *See id.*

The Transit Civil Action remains pending in the WDNY Court. The United States has voluntarily dismissed the Wehrle Civil Action with prejudice. *See* Order Granting Motion to Dismiss, Dkt. No. 134, *Acquest Wehrle, LLC*, No. 09-cv-637 (W.D.N.Y. Sept. 25, 2017).

**B.  Plaintiffs' Prior Civil Actions against the United States and Federal Employees**

In September 2006, Acquest Wehrle filed a civil suit against the government pursuant to the Administrative Procedure Act, seeking a determination that the Wehrle Property was exempt from the wetlands regulation provisions of the CWA. *See Acquest Wehrle LLC v. United States*, 567 F. Supp. 2d 402, 403 (W.D.N.Y. 2008). The WDNY Court dismissed the Complaint against the federal defendants for lack of subject matter jurisdiction, holding that there was no final agency action within the meaning of the APA. *Id.*

In June 2012, Plaintiffs filed a separate civil action in the WDNY Court against the United States and numerous individual EPA employees in their individual capacities. *Huntress v. Mugdan*, No. 12-cv-559 (W.D.N.Y.). This action brought, among other things, abuse of process and IIED claims under the FTCA for the filing the first and second indictments. *See* Second Amended Complaint, Dkt. No. 72, *Huntress*, No. 12-cv-559 (W.D.N.Y. Apr. 25, 2016). The individual federal defendants and the United States moved to dismiss all of Plaintiffs' *Bivens* and FTCA claims. *See* Motions to Dismiss by the Federal Defendants and the United States, Dkt. Nos. 80, 86, *Huntress*, No. 12-cv-559 (W.D.N.Y.). Approximately one month after the United States filed its motion to dismiss, Huntress and Acquest voluntarily dismissed that action. *See* Notice of Voluntary Dismissal, Dkt. No. 91, *Huntress*, No. 12-cv-559 (W.D.N.Y. Sept. 23, 2016).

In November 2012, Plaintiffs and Acquest Transit brought another civil action in the WDNY Court seeking: (1) a declaratory judgment stating that the Transit property is not subject to the CWA and (2) an injunction, ordering the United States to cease criminal prosecution and civil litigation against them for alleged CWA violations. *See Huntress v. U.S. Dep't of Justice*, No. 12-cv-1146, 2013 WL 2297076, at *14 (W.D.N.Y. May 24, 2013). The WDNY Court denied a request by the Plaintiffs for a preliminary injunction, decided two legal issues in EPA's favor, and consolidated the remainder of the case with the Transit Civil Action. *Id.* at *14.

## C.  The Complaint

Plaintiffs assert claims of malicious prosecution, intentional infliction of emotional distress, abuse of process, and conspiracy, all brought under the FTCA. *See* Compl. Specifically, the Complaint "seeks damages caused to Huntress by the two indictments" in the criminal actions brought against him. *Id.* at 6. Plaintiffs claim that EPA Criminal Investigation

Division agents, "together with other officers and agents of the EPA," acted with actual malice to "procure two indictments of Bill Huntress and Acquest." *Id.* at 42.

Plaintiffs allege that the indictments were unlawful because the term "waters of the United States," as used in the CWA and corresponding EPA regulations, is unconstitutionally vague and that the government's interpretation of the CWA formed the basis for all of the charges brought against the Plaintiffs. *See id.* at 20-30. Plaintiffs also allege that certain statements by EPA officials made to Huntress and others reflect the government's malice towards Plaintiffs. *See id.* at 30-31, 34, 41-42. The Complaint claims that the indictments were an effort to "punish [Huntress] for exercising his lawful right to challenge in Court the government's assertion of jurisdiction over his private property, and to coerce him into abandoning his legal rights to challenge the government in Court." *Id.* at 43-44. The Complaint seeks up to $387,629,459 in damages, together with any other relief that the Court may deem proper. *See id.* at 47.

## ARGUMENT

This Court lacks subject matter jurisdiction over this action because the United States has not waived sovereign immunity over the claims. Although the FTCA provides a limited waiver of sovereign immunity, any acts relating to the decisions to prosecute Plaintiffs are exercises of discretion that fall squarely into the FTCA's discretionary function exception. More, Plaintiffs cannot jettison the FTCA's intentional tort exception with conclusory allegations of purported law enforcement officer involvement.

Plaintiffs also fail to state any claims. A malicious prosecution claim cannot lie without a termination of the relevant proceedings in Plaintiffs' favor or where there was probable cause. The dismissals of Plaintiffs' indictments, respectively without prejudice and pursuant to a plea

deal, are not terminations in Plaintiffs' favor.  Plaintiffs also cannot overcome the presumption of probable cause produced by the grand juries' returns of their indictments.  Further, Plaintiffs cannot plead an abuse-of-process claim because, for example, they do not allege that legal processes were abused after the respective indictments.  More, Plaintiffs plead no circumstances suggesting that the disfavored IIED tort should be considered here.  Plaintiffs also cannot state a civil conspiracy claim because they have not pled any other tort claims, and the United States cannot conspire with itself.  Last, Plaintiffs' claims relating to the first criminal action are barred because they filed their administrative tort claim well-beyond the time permitted to do so.

### A. The Court Lacks Subject Matter Jurisdiction Over This Action

#### a. Legal Standard Governing Dismissal Pursuant To Rule 12(b)(1) Of The Federal Rules Of Civil Procedure

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted).  "[A] waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign."  *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (citation omitted).

#### b. The FTCA's Discretionary Function Exception Bars All of Plaintiffs' Claims

Although the FTCA waives sovereign immunity for certain enumerated torts, Section 2680(a) excepts from the FTCA sovereign-immunity waiver "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C.  § 2680(a).  By so limiting the FTCA, "[t]he discretionary

function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'"  *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 190 (2d Cir. 2008) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)).  As the Second Circuit has explained, "[t]he wellspring of the discretionary function exception is the doctrine of separation of powers.  Simply stated, principles of separation of powers mandate that the judiciary refrain from deciding questions consigned to the concurrent branches of the government."  *In re Joint Eastern and Southern Dists. Asbestos Litigation*, 891 F.2d 31, 35 (2d Cir. 1989) (citing *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982)).

Application of the discretionary-function exception involves a two-part inquiry. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). First, the challenged actions "must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation," and second, "the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *Gaubert*, 499 U.S. at 322-23; *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)).  The focus of the inquiry is not on subjective intent, but "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

Courts have consistently held that "[p]rosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." *O'Connell v. United States*, No. 15-cv-6512 (RJD)

8

(RLM), 2017 WL 3701856, at *4 (E.D.N.Y. Aug. 25, 2017) (internal citation and quotation marks omitted); *see also Moore v. Valder,* 65 F.3d 189, 197 (D.C.Cir. 1995) ("Deciding whether to prosecute" and the manner of prosecution are "quintessentially discretionary."); *Wang v. United States*, No. 01-cv-1326 (HB), 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001) (holding discretionary function exception applied to decision to prosecute) *aff'd* 61 Fed. Appx. 757 (2d. Cir. 2003); *Morales v. United States*, No. 94-cv-4865 (JSR), 1997 WL 285002, at *1 (S.D.N.Y. May 29, 1997) (same).  Similarly, this exception precludes claims against "investigative and law enforcement agents aiding in the investigation to determine whether to prosecute."  *Morales*, 1997 WL 285002, at *1.

The crux of Plaintiffs' Complaint is that the government indicted Plaintiffs without a legal basis and for improper purposes.  *See, e.g.,* Compl. at 4, 6, 7, 39, 42 ("By this Complaint, Plaintiffs seek damages proximately caused by the filing of felony criminal charges. .   . the conduct alleged in the two indictments was not 'a crime,' and neither Bill Huntress's nor Acquest's conduct was unlawful. . . [i]n making its decision to indict Bill Huntress and Acquest, the government was not following the objectives of Congress when Congress enacted the [Clean Water Act] . . . the EPA wanted to '[make] example' of people who have [violated EPA] "interpretations of vague statutes and regulations.'").  Such "[d]ecisions as to whether, when and against whom to initiate prosecution" are "quintessential examples of government discretion in enforcing criminal law." *Wang*, 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001).  Indeed, the discretionary function exception encompasses such decisions "even if that decision constitutes an abuse of prosecutorial discretion."  *O'Connell*, 2017 WL 3701856, at *4 (E.D.N.Y. Aug. 25, 2017) (quoting *Wang*, 2001 WL 1297793, at *4); *see also Morales v. United States*, No. 94 CIV. 4865 (JSR), 1997 WL 285002, at *1 (S.D.N.Y. May 29, 1997) ("The discretionary function

exception to the FTCA bars claims of malicious prosecution against government prosecutors who, in their discretion, decide to prosecute an individual, as well as against investigative and law enforcement agents aiding in the investigation to determine whether to prosecute").  So too with respect to any purported "procurement" of the indictments by the EPA, which is inherently tied to the decision to prosecute.  *See O'Connell*, 2017 WL 3701856, at *4 ("The investigative/advocacy distinction is not relevant in the context [of] the discretionary function exception to the FTCA.  Rather, [w]here an allegation of improper investigatory conduct is tied to the decision to prosecute and the presentation of evidence to the grand jury, the discretionary function exception [still] precludes suit against the government." (quotation and citation omitted)).  Further, EPA's alleged improper motives in obtaining the indictments—to retaliate against Huntress and gain an advantage over him in the civil actions—are irrelevant to whether this exception applies.  *See* Wang, 2001 WL 1297793, at *4 ("[T]he discretionary function exception is indifferent to the government actor's motivation").

In addition, "judgments made as to what acts to perform in a federal investigation of criminal activity are the kinds of policy decisions that the discretionary function exception[] seeks to protect."  *Valdez v. United States*, No. 08-cv-4424 (RPP), 2009 WL 2365549, at *6 (S.D.N.Y. July 31, 2009).  Here, Plaintiffs allege that the EPA's then-Regional Counsel referred the Huntress action to the EPA's Criminal Investigation Division, but that the Regional Counsel later "admitted" that he was not an expert in criminal law or the CWA.  Compl. at 32.  This referral is a judgment on whether and how to investigate, and thus falls squarely into within the exception.  *See id.* ("[D]ecisions about how to conduct investigations fall squarely within the discretionary function exception."); *see also K.W. Thompson Tool Co., Inc. v. United States,* 836 F.2d 721, 727-28 (1st Cir. 1988) ("There can be no question that the law directing the EPA to

develop comprehensive programs for water pollution control and the statutory provisions for standards and their enforcement invoke the use of agency discretion.").

In sum, the acts that Plaintiffs' complain about are grounded in the exercise of judgment, not statute or regulation.  They are therefore policy decisions left to the Executive Branch.  *See Wang v. United States*, 61 F. Appx 757, 759 (2d Cir. 2003) (holding that "[c]onduct taken by law enforcement agents involving an element of discretion, which discretion is based on considerations of public policy, is bulletproof from liability under the operative discretionary function exception" (citations and internal quotation marks omitted)).   The FTCA's discretionary function exception thus applies in full, and the Court lacks subject matter jurisdiction over all of Plaintiffs' claims.

### c.   The FTCA's Intentional Tort Exception Bars All of Plaintiffs' Claims

As relevant here, the FTCA generally "excepts from the waiver of immunity" any malicious prosecution or abuse of process claims, as well as any other tort claims arising from the same.  *Simone v. United States*, 642 F. Appx 73, 75 (2d Cir. 2016); *see also* 28 U.S.C. § 2680(h).  This exception, however, does not apply to "acts or omissions of investigative or law enforcement officers of the United States Government."  28 U.S.C. § 2680(h).  Section 2680(h) further defines such officers as any "officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.*

It is well-established that "the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors."  *Bernard v. United States*, 25 F.3d. 98, 104 (2d Cir. 1994).  Plaintiffs attempt to evade this restriction by alleging instead that the "wrongful and intentional acts and omissions were committed by 'investigative or law enforcement officers' as defined in 28 U.S.C.A. § 2680(h), specifically, Special Agents of the Criminal Investigation

11

Division of the EPA . . . including but not limited to Robert Conway, William V. Lometti, David McLeod, Brian Kelly, and Daniel Lau."  Compl. at 3.  To sustain a claim of malicious prosecution based on the acts of law enforcement agents, however, there must be an allegation that the officers in some way pressured prosecutors to bring criminal charges or otherwise exerted enough control over the prosecution prior to indictment.  *See Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009) ("[T]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding") (citing cases); *Quinoy v. Pena*, No. 13-cv-1945 (NSR), 2014 WL 1998239, at *10 (S.D.N.Y. May 14, 2014) ("The law enforcement officer must do far more than simply aid in the investigation.").  But other than alleging that these individuals were assigned to the EPA's New York Reporting Office and that they helped "procure" or "caused" the indictments, *see* Compl. at 3-4, 42, the Complaint includes no other allegations regarding these individuals and any purportedly tortious acts they committed.  *See* Compl.  Plaintiffs do not offer any details regarding the role the individuals played with respect to the indictments, any allegation that the agents improperly applied pressure upon the prosecutors to bring criminal charges, or any allegation that any EPA CID agents fashioned the purportedly improper legal theories that are at the core of Plaintiffs' protests.  *See id.*  Such "naked assertions" thus lack the "further factual enhancement" necessary to survive a motion to dismiss.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).

Similarly, Plaintiffs' IIED and civil conspiracy claims are barred because they mirror the malicious prosecution and abuse-of-process claims.  *See* 28 U.S.C. § 2680(h) (barring any tort claims that arise from the enumerated excepted intentional torts).  For example, Plaintiffs' IIED claim is based on "the government conduct described [in the Complaint]," Compl. at 43, which

in turn seeks damages "proximately caused by the filing of felony criminal charges." *Id.* at 4. Likewise, in pleading their civil conspiracy claim, Plaintiffs allege that the "[t]he two unlawful, and malicious prosecutions of Bill Huntress and Acquest, as set forth [in the Complaint], involved a conspiracy." *Id.* at 46. "In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Dorking Genetics v. United States*, 76 F.3d 1261, 1265 (2d Cir. 1996) (citation and internal quotation omitted). Because the IIED and civil conspiracy claims are based on the same allegations as claims enumerated in Section 2680(h), they are barred by the FTCA's intentional tort exception. *See Simone*, 642 F. Appx 73 at 75 (holding that intentional tort exception applied to negligence claim because it "arises out of the intentional torts of false arrest and malicious prosecution."). The FTCA's intentional tort exception therefore bars all of Plaintiffs' claims, and the Court lacks subject matter jurisdiction over this action.

## B.  Plaintiffs Fail to State a Claim

### a.  Legal Standard Governing Dismissal Pursuant To Rule 12(b)(6) Of The Federal Rules Of Civil Procedure

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir. 2006); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999). To survive, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 6 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). For a claim to be plausible, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

13

### b.  Plaintiffs' Claims Regarding the First Criminal Action Are Untimely

Under the FTCA, a tort claim against the United States shall be "forever barred unless it

is presented in writing to the appropriate Federal agency within two years after such claim

accrues."  28 U.S.C. § 2401(b).  "The date on which an FTCA claim accrues is determined as a

matter of federal law."  *Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005).  An FTCA claim

generally accrues "on the date that a plaintiff discovers that he has been injured." *Valdez ex. rel*

*Donely v. United States*, 518 F.3d 173, 177 (2d Cir.2008).  For FTCA accrual purposes, "a cause

of action for malicious prosecution accrues when a criminal proceeding terminates in a plaintiff's

favor."  *Caronia v. United States*, No. 13-cv-5758 (FB) (LB), 2015 WL 4872558, at *5

(E.D.N.Y. Aug. 13, 2015) (citing *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d

Cir.1996)), *aff'd sub nom*. *Caronia v. Orphan Med., Inc.*, 643 Fed. Appx 61 (2d Cir. 2016).

The first criminal action against the Plaintiffs terminated, at the latest, on July 9, 2013,

when the Second Circuit issued a mandate to the WDNY Court reflecting that the Second Circuit

had granted the government's motion to withdraw an appeal of the WDNY Court's dismissal

order.  *See* Dkt. No. 62, *Acquest Development, LLC.*, 11-cr-347 (WMS) (JJM) (W.D.N.Y. Jul. 9,

2013).  Plaintiffs did not file their administrative tort claim for this action until April 3, 2017,

over three years later.  Compl. at 5.  Nor can Plaintiffs claim that they could not know their

alleged injuries until a time after the conclusion of the first criminal action.  Indeed, on June 15,

2012, Plaintiffs filed their first FTCA action against the United States, alleging that the first

criminal action was brought against the Plaintiffs "for improper purposes and without legal

justification."  Complaint ¶ 126, Dkt. No. 1, *Acquest v. United States*, 12-cv-559 (WMS)

(W.D.N.Y. June 15, 2012).  Because all of Plaintiffs' claims relating to the first criminal action

14

accrued prior to April 3, 2015 (i.e., two years prior to filing their administrative tort claim),
Plaintiffs have failed to state any FTCA claims regarding to the first criminal action.

### c. Plaintiffs Fail to Sufficiently Plead a Malicious Prosecution Claim

New York law governs Plaintiffs' tort claims under the FTCA. *See Liranzo v. United
States*, 690 F.3d 78, 86 (2d Cir. 2012) ("[T]he FTCA directs courts to consult state law to
determine whether the government is liable for the torts of its employees.").  "To establish
a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or
continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in
plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual
malice as a motivation for defendant's actions."  *Manganiello v. City of N.Y.*, 612 F.3d 149, 161
(2d Cir. 2010) (quotations and citations omitted).  "[T]he law 'places a heavy burden on
malicious prosecution plaintiffs.'"  *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004)
(quoting *Smith–Hunter v. Harvey,* 95 N.Y.2d 191, 195 (2000)).  Here, Plaintiffs have failed to
plead that: (a) any of the relevant proceedings terminated in Plaintiffs' favor (with the exception
of any claims relating to the CWA charges brought in the first indictment); (b) either of the
indictments lacked probable cause; or (c) any actual malice.

### i. Neither Criminal Action Terminated in Plaintiffs' Favor

In order to establish that a prosecution terminated in favor of a plaintiff, the plaintiff must
establish that the prosecution was terminated on its merits.  *Breen v. Garrison*, 169 F.3d 152, 153
(2d Cir.1999) ("[A] decision on the merits [is] an essential element of a cause of action for
malicious prosecution[.]").  "Where a prosecution did not result in an acquittal, it is generally not
deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim,
unless its final disposition is such as to indicate the accused's innocence."  *Fulton v.*

*Robinson*, 289 F.3d 188, 196 (2d Cir. 2002).  Here, neither criminal action resulted in an acquittal; the first case was dismissed without prejudice, the second was dismissed against Plaintiffs after Huntress's other company agreed to plead guilty to criminal contempt.  *See Acquest Development*, 932 F. Supp. 2d 453 (dismissing first indictment without prejudice); Plea Agreement and Judgment, Dkts. No. 77, 84, *United States v. Huntress*, No. 13-cr-199 (WMS) (JJM).  These are not favorable terminations.  *See Rothstein*, 373 F.3d at 289 (no favorable determination where charges were dismissed pursuant to agreement with prosecutors); *Marino v. Jonke,* No. 11–cv–430 (VB), 2012 WL 1871623, at *7 (S.D.N.Y. Mar.30, 2012) (no favorable termination when "the dismissal is without prejudice and the prosecution may proceed on an amended information"); *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84 (2001) ("A termination is not favorable, for example, where a prosecution ends because of a compromise with the accused").[2]

### ii. Plaintiffs Fail to Plead That Either Criminal Action Lacked Probable Cause

Where plaintiffs have been indicted, New York law "creates a presumption of probable cause."  *Rothstein*, 373 F.3d at 282-83 (citation and internal quotation omitted).  "To rebut this presumption, the plaintiff 'must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Jackson v. City of New York*, No. 01-cv-10116 (RCC), 2005 WL 1538205, at *3 (S.D.N.Y. June 29, 2005) (internal

---

[2] Because the government has not renewed criminal Clean Water Act charges against the Plaintiffs, the United States does not contest, at this motion to dismiss stage, that those charges had a "favorable determination" as a result of the dismissal without prejudice of the first indictment. *Cf. Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000) ("A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the public prosecutor." (citation and internal quotation omitted)).  For the other reasons described herein, those claims should still be dismissed.

citation and quotation marks omitted).   "'[M]ere conjecture and surmise' are insufficient to rebut

the presumption." *Blount v. Moccia*, No. 16-cv-4505 (GHW), 2017 WL 5634680, at *9

(S.D.N.Y. Nov. 21, 2017) (internal citation and quotation marks omitted).  Plaintiffs do not

allege that either of the indictments were produced by fraud, perjury, or evidence suppression.

*See* Compl.  Instead, the Complaint alleges that the government indicted Plaintiffs "to increase

the pressure and punish [Huntress] for his temerity in refusing to give in to the EPA's demands,

and compel acceptance of their assertion of alleged jurisdiction over his private property."

Compl. at 6; *see also id.* at 7 ("[T]hey were criminal prosecutions based on the EPA's notion that

the EPA – whether acting properly, or improperly, or even if acting without jurisdiction – must

be obeyed. The EPA's objective was to compel such obedience, and to punish Bill Huntress and

Acquest for perceived disobedience.").  Plaintiffs plead the following specific allegations:

- At a conference attended by Huntress and Acquest's General Counsel
  on July 27, 2007, Walter Mugdan (then allegedly the EPA's Regional
  Counsel for EPA Region 2) asserted, "Let the Chief Justice try to
  enforce" the views espoused by Chief Justice John Roberts when he
  joined Justice Antonin Scalia's opinion and also wrote separately in
  *Rapanos v. United States*, 547 U.S. 715 (2006).[3]  Compl. at 31.

- Mr. Mugdan allegedly referred Huntress's case to the EPA's criminal
  division.  Compl. at 32.

- The EPA dedicated a "number of years" and considerable resources to
  the civil actions against Huntress.  Compl. at 33.

---

[3] *Rapanos* contains two competing standards for determining whether particular wetlands are
within CWA jurisdiction, which are respectively set forth in a plurality decision by Justice Scalia
and a concurring opinion by Justice Anthony Kennedy.  *See* 547 U.S. at 739, 759, 780.

The Second Circuit has not yet addressed which standard shall be used to establish CWA
jurisdiction after *Rapanos*.  Circuit courts are divided on whether jurisdiction exists where either
standard is met, or if Justice Kennedy's test alone creates the applicable standard.  *Compare
United States v. Donovan*, 661 F.3d 174 (3d Cir. 2011) (holding that jurisdiction exists where
either standard is met) *with United States v. Robison,* 505 F.3d 1208, 1221-22 (11th Cir.2007)
(holding that Justice Kennedy's test alone creates the applicable standard).

- Phyllis Feinmark, the Branch Chief, Water and General Law Branch, Office of Regional Counsel for EPA in New York City, stated to Acquest's General Counsel that "the government does not care about money or time; Bill Huntress does."  Compl. at 34.

- A Senior Trial Attorney of DOJ's Environmental Defense Section told Huntress and Acquest's General Counsel that "we have a lot of tools in our box."  Compl. at 37.

- The EPA wanted to "[make an] example" of people who have violated EPA interpretations of statutes and regulations, and an EPA official analogized the deterrent effect associated with environmental enforcement actions to how "Romans used to conquer little villages in the Mediterranean."  Compl. at 41-42.

- The first indictment referred to the Transit Property as "wetlands," while the second indictment used the term "potential wetlands." Compl. at 21.

Even taking these allegations as true, the alleged EPA statements at most suggestive of

the EPA's enforcement priorities and whether one EPA official believed that Justice Scalia's

opinion in *Rapanos* should be the law.  They are not, however, suggestive at all of any "bad

faith" on the part of EPA officials.  *See Huntress*, 2015 WL 631976, at *17 (holding that there

was no "evidence supporting [Huntress and Acquest's] argument that the initiation of the

[second] criminal prosecution was influenced by the alleged animus of the civil enforcement

officials" where Plaintiffs had pointed to the same alleged remarks by Feinmark, Mugan, and the

DOJ Senior Trial Attorney); c*f. McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (holding

that it could be concluded that a prosecution was driven by personal animus where, among other

factors, the plaintiff had a physical altercation with the police officer that "supervised the

investigation despite his obvious conflict of interest").  Plaintiffs' other conclusory allegations of

malice are likewise "insufficient to rebut the presumption of probable cause created by an

indictment by a grand jury."  *Wright v. Rutulante*, No. 16-cv-10068 (KMK), 2018 WL 1578172,

at *6 (S.D.N.Y. Mar. 27, 2018).

18

Moreover, the fact that the first indictment referred to the Transit Property as wetlands, while the second used the term "potential wetlands," was entirely proper—the second indictment did not bring charges under the CWA and instead re-brought the charges arising from Defendants' alleged criminal acts after the EPA exercised its "authority to make inquiries of a land owner for the purpose of determining whether the agency has jurisdiction under the CWA." *See Huntress*, 2015 WL 631976, at *2 ("The "use of the phrase 'potential wetlands' does not undermine the facial validity of the second Indictment."). Indeed, with respect to the second indictment and the non-CWA charges in the first indictment, Plaintiffs' protests regarding the vagueness of certain terms in the CWA is a non-sequitur—Plaintiffs were charged with conspiracy, obstruction of justice, concealment of material facts, making false statements, and criminal contempt. By way of illustration, the crime of contempt provides that a United States court may punish, by fine or imprisonment, contempt of its authority such as "[d]isobedieance . . . to its lawful . .. order." 18 U.S.C. § 401. Both Indictments charged Plaintiffs with violating 18 U.S.C. § 401 by disobeying the WDNY Court's preliminary injunction in the Transit Civil Action; Huntress's company Acquest Transit pled guilty to that offense. Whether the terms "wetlands" or "waters of the United States" are unconstitutionally vague has no bearing on whether there was probable cause to conclude that Plaintiffs have violated that statute.

Because the Plaintiffs cannot overcome the presumption of probable cause, this Court need not reach the issue of whether the CWA was too vague for Plaintiffs to understand whether the CWA applied to the Transit Property. Regardless, since the Supreme Court issued its decision in *Rapanos,* federal courts have uniformly held that the CWA is not void for vagueness where the defendant had some knowledge of the possibility that property contained waters of the United States. *United States v. Lucas*, 516 F.3d 316 (5th Cir. 2008); ("Even in the absence of the

19

disputed agency warnings, the prevalence of wet property" along with "an area network of creeks and their tributaries leading to the Gulf, some of which connected to wetlands on the property, should have alerted 'men of common intelligence' to the possibility that the wetlands were waters of the United States under the CWA."); *United States v. Robertson*, 875 F.3d 1281, 1292-93 (9th Cir. 2017) (defendant indicted for criminal CWA violations had fair notice when "the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal"); Order Denying Defendant's Motion to Dismiss Superseding Indictment, *United States v. Lucero*, Dkt. No. 44 at 4, No. 16-cr-00107 (HSG), (N.D. Cal. Nov. 14, 2017) (holding that *Rapanos* and the case law interpreting it provide adequate notice to the defendant); *United States v. Rodriguez*, No. 9-cr-279, 2011 WL 1458231, at *6 (D. Idaho Apr. 15, 2011) (same); *United States v. Lippold*, No. 06-cr-30002, 2007 WL 3232483 (C.D. Ill. Oct. 31, 2007) (same).

### iii. Plaintiffs Have Not Pled Facts Sufficient to Show That Any Federal Employees Acted with Actual Malice

To establish malicious intent, a plaintiff must plead facts that suggest an active suppression of facts by the government, such as falsified evidence or other actions that "tend[] to show that the accuser did not believe in the guilt of the accused."  *Martin v. City of Albany*, 42 N.Y. 2d 13, 17 (1977) (quoting Restatement (Second) of Torts § 669); *see also Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (noting that the inquiry is whether the motive was "something other than a desire to see the ends of justice served").  For the same reasons that Plaintiffs have failed to plead that any government employee had bad faith, Plaintiffs have not plead any facts suggesting that their prosecutions arose for improper ulterior reasons.  Moreover, the purported motivations assigned to the government such as "EPA's proven addiction to vagueness," Compl. at 31, and its "obsessive quest for punishment," Compl. at 33, do not state a

claim for "actual malice." *Shapiro v. Goldman*, No. 14-cv-10119 (NRB), 2016 WL 4371741, at

*19 (S.D.N.Y. Aug. 15, 2016) *aff'd* 696 Fed. Appx 532 (2d Cir. 2017) (finding no actual malice

where plaintiff alleged that the government had been "captured" by the insurance industry, and

the U.S. Attorney had a "craze to indict").

### d. Plaintiffs Fail to State an Abuse-of-Process Claim

In order to establish an abuse-of-process claim under New York law, a plaintiff must

establish: "(1) [a] regularly issued process compelling the performance or forbearance of some

prescribed act, (2) the person activating the process must have been motivated to do harm

without economic or social excuse or justification, and (3) the person activating the process must

be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside

the legitimate ends of process." *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994)

(citation omitted).  The abuse-of-process tort differs from malicious prosecution in that "[t]he

gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate

perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477,

486 n.5 (1994).  Further, "[t]he gist of abuse of process is the improper use of process after it is

regularly issued." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Here, Plaintiffs allege that "the indictments of Bill Huntress and his company were

brought in an effort to punish him for his temerity in refusing to accept the EPA's assertions of

jurisdiction over his land, and what the EPA considered to be his obstinate defense of the EPA's

two civil suits against him, and to gain an advantage over him in those civil cases."  Compl. at

45.  At the outset, because Plaintiffs do not allege that legal processes were abused *after* the

respective indictments, they fail to state an abuse-of-process claim.  *Gilman v. Marsh &*

*McLennan Cos.*, 654 F. Appx 16, 16-17 (2d Cir. 2016) ("To the extent [Plaintiffs] allege any

'abuse,' it unquestionably came *before* the process in question (their respective indictments), not after. Accordingly, we affirm the district court's dismissal of their abuse of process claim.").

Further, an improper "motive" alone does not give rise to an abuse-of-process claim; there must be an ulterior or collateral purpose to which the process is then put. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003); *Shapiro v. Goldman*, 2016 WL 4371741, at *22 ("Simply claiming various ulterior motives for a prosecution does not sufficiently show that a collateral objective . . . drove defendant to pervert the regularly issued process . . . to the accomplishment of an improper purpose." (citation and internal quotation omitted)) *aff'd,* 696 F. Appx 532 (2d Cir. 2017).  Plaintiffs' allegation that the indictments were brought to punish Plaintiffs for their defense of the civil actions does not establish the type of collateral objective that gives rise to a claim for abuse of process. *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 Fed. Appx 770, 771-72 (2d Cir. 2013) ("Neither retaliation nor a malicious motive, however, is a sufficient collateral objective to satisfy that element of a cognizable malicious abuse of process claim. . . Rather, New York law requires 'an ulterior purpose or objective in facilitating [the] prosecution.'" (internal citation omitted)).

Last, the specific acts alleged—the government's purported misinterpretation of the law, the time and resources allocated by the EPA to the matters in question, a DOJ trial attorney's statement that "we have a lot of tools in our box," and a colorful speech by an EPA official regarding the deterrent value of enforcement actions generally and without reference to Plaintiffs' case specifically—do not support any inference that the indictments were brought to gain an advantage over Plaintiffs in the civil cases.

###### e.   **Plaintiffs Fail to State an IIED Claim**

Under New York law, there are "four elements of a cause of action for [IIED]: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Fusco v. Cty. of Putnam, New York*, No. 15-cv-08132 (NSR), 2018 WL 1889070, at *12 (S.D.N.Y. Apr. 18, 2018) (internal quotation and citation omitted). IIED "remains a highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 158 (2d Cir. 2014).  Establishing it requires a plaintiff to plead and prove facts showing that the defendant "engag[ed] in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Id.* at 157 (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985).

Thus, although Plaintiffs allege that the conduct "involved a deliberate disregard for the victims' constitutional rights," the indictments cannot be said to "transcend[ ]  the bounds of decency as to be regarded as atrocious and intolerable," especially given that: (1) a Huntress-controlled company pled guilty to a charge in the second indictment and Plaintiffs were dismissed pursuant to a plea deal: (2) the WDNY Court refused to dismiss that indictment;  and (3) prior to the first indictment, the WDNY Court held, among other things, that there was probable cause of environmental crimes.  Moreover, an IIED claim is not sustainable where "the conduct underlying [the claim] may be addressed through traditional tort remedies." *Berrio v. City of New York*, No. 15-cv-09570 (ALC), 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017).  Thus, because Plaintiffs' complaints may be addressed through his malicious prosecution and abuse-of-process claim, no IIED claim may lie here.  *See Salmon v. Blesser*, 802 F.3d 249, 256

(2d Cir. 2015) (dismissing IIED claim where the alleged conduct would have been actionable under another tort).

### f.   Plaintiffs Fail to State a Civil Conspiracy Claim

"[U]nder New York law, no substantive tort of civil conspiracy exists." *C.D. of NYC, Inc. v. U.S. Postal Serv.*, No. 03-cv-5055 (JFK), 2004 WL 2072032, at *5 (S.D.N.Y. Sept. 16, 2004), *aff'd,* 157 F. Appx 428 (2d Cir. 2005).  Instead, an action for civil conspiracy only may be pled "if it is connected to a separate underlying tort."  *Fisk v. Letterman,* 424 F.Supp. 2d 670, 677 (S.D.N.Y. 2006).  For the reasons stated herein, Plaintiffs have failed to plead any of their tort claims.  The Court should therefore dismiss Plaintiffs' civil conspiracy claim.  *See Rutty v. Krimko*, No. 17-cv-6090 (BMC) (VMS), 2018 WL 1582290, at *5 (E.D.N.Y. Mar. 30, 2018) (dismissing civil conspiracy claims where underlying tort claim was not cognizable); *C.D. of NYC, Inc.*, 2004 WL 2072032, at *5 (same);

Moreover, the United States is treated as a singular individual under Section 1346(b)'s waiver of sovereign immunity.  *See* 28 U.S.C. § 1346 (describing certain actions against "the United States").   Under New York law, to establish a civil conspiracy claim, the plaintiff must demonstrate "an agreement between two or more parties."  *ACR Sys., Inc. v. Woori Bank*, No. 14-cv-2817 (JFK), 2018 WL 1757019, at *6 (S.D.N.Y. Apr. 10, 2018) (citation and internal quotation omitted).  Here, Plaintiffs allege that "[t]he conspiracy involved an agreement between two or more employees of the EPA, including at least one CID agent, and as well as others within the United States Government."  Compl. at 46.  The United States, however, cannot conspire with itself.  *McKinney v. United States*, No. 17-1055, 2018 WL 618399, at *1–2 (10th Cir. Jan. 30, 2018) (upholding dismissal of civil conspiracy claims because "the only proper defendant . . .  was the United States, which cannot conspire with itself"); *Bowling v. United*

*States*, 740 F. Supp. 2d 1240, 1250 (D. Kan. 2010) (dismissing Plaintiffs' civil conspiracy claims against the United States because the government could not "engage in a civil conspiracy with itself").  Plaintiffs have thus failed to plead a civil conspiracy claim.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims.

Dated: June 11, 2018
     New York, New York

                        Respectfully submitted,

                        GEOFFREY S. BERMAN
                        United States Attorney for the
                        Southern District of New York
                        *Counsel for the United States of America*

By:    /s/ Charles S. Jacob_____
                        CHARLES S. JACOB
                        Assistant United States Attorney
                        86 Chambers Street, Third Floor
                        New York, New York 10007
                        (212) 637-2725
                        charles.jacob@usdoj.gov