UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM L. HUNTRESS, et al.,
                        Plaintiffs,

                -v-

UNITED STATES,
                        Defendant.

18-CV-2974 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

       Plaintiffs William L. Huntress and Acquest Development, LLC ("Acquest") (collectively, "Plaintiffs") bring this action against Defendant the United States ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging malicious prosecution, intentional infliction of emotional distress, and abuse of process by agents of the Environmental Protection Agency ("EPA"). (Dkt. No. 1 ("Compl.").) The Government moves to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted under Rule 12(b)(6). (Dkt. No. 15.) For the reasons that follow, the Government's motion is granted pursuant to Rule 12(b)(1).

**I.    Background**

       The following facts are drawn primarily from the allegations in Plaintiffs' Complaint, which are presumed true for purposes of deciding this motion, as well as from prior judicial opinions of which this Court may take judicial notice.[1]

---

[1] "A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits." *Gertskis v. U.S. E.E.O.C.*, No. 11 Civ. 5830, 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013). Here, the Court takes judicial notice of the decisions in *United States v. Acquest Transit LLC*, No. 09 Civ. 055S, 2009 WL 2157005 (W.D.N.Y. July 15, 2009), *United States v. Acquest Dev., LLC*, 932 F. Supp. 2d 453 (W.D.N.Y. 2013), *United States v. Huntress*, No. 13 Cr. 199, 2015 WL

Huntress is the President and Sole Managing Member of Acquest, a limited liability company in New York. (Compl. at 2.) Acquest owns two pieces of property in Amhert, New York—one on Wehrle Drive (the "Wehrle Property"), and the other on Transit Road (the "Transit Property"). (Compl. at 11, 14.)

In January 2009, the Government commenced a civil action against Acquest Transit LLC ("Acquest Transit")[2] for violations of the Clean Water Act ("CWA") on the Transit Property. *United States v. Acquest Transit LLC*, No. 09 Civ. 055S, 2009 WL 2157005, at *1 (W.D.N.Y. July 15, 2009). In light of Acquest Transit's failures to comply with the EPA's cease and desist orders, the court granted the Government's motion for a preliminary injunction and enjoined Acquest Transit from "performing any additional earthmoving work at the" Transit Property. *Acquest Transit LLC*, 2009 WL 2157005, at *10–11. That lawsuit is still pending. (Compl. at 14.)

Also in 2009, the Government filed another civil action against Plaintiffs and Acquest Wehrle, LLC, for CWA violations on the Wehrle Property. (Compl. at 14.) The Government later voluntarily dismissed this action with prejudice in 2017. *United States v. Acquest Wehrle, LLC*, No. 09 Civ. 637, 2017 WL 6387801, at *1 (W.D.N.Y. Nov. 1, 2017).

Later in 2011, the Government procured a seven-count indictment against Plaintiffs and Acquest Transit accusing them of various crimes, "including conspiracy, obstruction of justice, concealment of material facts, and violations of the Clean Water Act." *United States v. Acquest Dev., LLC*, 932 F. Supp. 2d 453, 456 (W.D.N.Y. 2013). This indictment was eventually

---

631976 (W.D.N.Y. Feb. 13, 2015), and *United States v. Acquest Wehrle, LLC*, No. 09 Civ. 637, 2017 WL 6387801 (W.D.N.Y. Nov. 1, 2017).

[2] Acquest Transit LLC appears to be a company managed by Huntress. *Compare United States v. Acquest Transit LLC*, No. 09 Civ. 055S, 2009 WL 2157005, at *1 (W.D.N.Y. July 15, 2009) *with* Compl. at 14.

2

dismissed without prejudice on the ground that the Government had interfered with the grand jury's independence. *Id.* at 463. The dismissing court allowed the Government leave "to seek another indictment before a different grand jury." *Id.*

Subsequently, a new grand jury returned a five-count indictment against Plaintiffs and Acquest Transit in 2013. (Compl. at 38.) Plaintiffs and Acquest Transit moved to dismiss the indictment, but the court denied their motion. *United States v. Huntress*, No. 13 Cr. 199, 2015 WL 631976, at *1 (W.D.N.Y. Feb. 13, 2015).[3] Acquest Transit later entered into a plea agreement with the Government, under which it agreed to plead guilty to the criminal contempt charge and pay a $500,000 fine. *See United States v. Huntress*, No. 13 Cr. 199 (W.D.N.Y. Nov. 5, 2015), Dkt. No. 77 at 1. The Government subsequently dismissed the rest of the charges against Acquest Transit and Plaintiffs. *See United States v. Huntress*, No. 13 Cr. 199 (W.D.N.Y. Mar. 11, 2016), Dkt. No. 85.

On April 4, 2018, Plaintiffs commenced this lawsuit against the Government under the FTCA for its employees' alleged wrongdoing in connection with the issuance of these two criminal indictments. (Dkt. No. 1.) Specifically, Plaintiffs allege that that the EPA agents responsible for Plaintiffs' prosecution improperly "procure[d the] two indictments" against them. (Compl. at 42.) Plaintiffs assert three causes of action in connection with the EPA agents' alleged improper conduct: (1) malicious prosecution, (2) intentional infliction of emotional distress, and (3) abuse of process. (Compl. at 42–45.)

---

[3] The Westlaw database misstates this case's docket number. Instead of No. 13 Civ. 199S, the correct case number is No. 13 Cr. 199.

The Government now moves to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Dkt. No. 15.) With briefing now completed (Dkt. Nos. 23, 26), the motion is ripe for resolution.

## II. Legal Standards

"Generally, a claim may be properly dismissed for lack of subject matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it." *Kingsley v. BMW of N. Am. LLC*, No. 12 Civ. 234, No. 12 Civ. 350, 2012 WL 1605054, at *2 (S.D.N.Y. May 8, 2012). "In resolving a motion to dismiss under Rule 12(b)(1)" based solely on a facial challenge to the sufficiency of a pleading, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). If, however, "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). The party asserting subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire*

4

*Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**III.     Discussion**

As a threshold matter, the Court must consider whether it has the statutory or constitutional power to adjudicate this case. The Government argues, among other things, that the Court does not have subject matter jurisdiction to hear this case because all of Plaintiffs' claims are based on alleged misconduct of the EPA agents that falls within the FTCA's discretionary function exception. (Dkt. No. 16 at 7–11.) Plaintiffs contend that the discretionary function exception does not apply. (Dkt. No. 23 at 2–6.)

The FTCA waives the sovereign immunity of the United States from suits for negligent or wrongful conducts of government employees subject to several exceptions. *See* 28 U.S.C. §§ 2671–80. Under the discretionary function exception, the Government is not liable for any claim based upon the exercise or failure to exercise "a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a).

The Supreme Court has laid out a two-part test to evaluate whether a government employee's conduct falls within the discretionary function exception. First, the alleged misconduct must involve an "element of judgment or choice" and not be compelled by statute or regulation. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *see also United States v. Gaubert*, 499 U.S. 315, 322 (1991). Second, the alleged misconduct must be "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537; *see also Gaubert*, 499 U.S. at 323. This latter requirement is meant to prevent courts from engaging in the "'second-guessing' of

5

legislative and administrative decisions grounded in social, economic, and political policy." *Gaubert*, 499 U.S. at 323 (quoting *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). Thus, the relevant inquiry is "whether the [government] decision is susceptible to policy analysis." *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 37 (2d Cir. 1989) (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 121 (3d Cir. 1988).

Before engaging in the *Berkovitz-Gaubert* test to evaluate whether the discretionary function exception applies, the Court first needs to determine what the alleged government misconduct is. Apparent inconsistencies between Plaintiffs' allegations in the Complaint and their opposition briefing render this analysis somewhat more difficult than it otherwise would be. Plaintiffs' Complaint appears to base their FTCA malicious prosecution claims against the Government on their allegations that the EPA agents "procure[d] two indictments of Bill Huntress and Acquest," and that "[t]he agents and employees of the EPA . . . [brought] and/or [continued] those prosecutions" with malice. (Compl. at 42.) Plaintiffs' two other claims—intentional infliction of emotional distress and abuse of process—also appear to be based on the procurement of these two indictments. (Compl. 43–45.) But in their opposition brief, Plaintiffs appear to move away from this basis for their claims, and instead assert that "the Complaint is not based on 'prosecutorial decisions . . . ,' or a 'decision to prosecute,' . . . or even a claim against a [law enforcement officer] who merely *aided* 'in the investigation to determine whether to prosecute.'" (Dkt. No. 23 at 5 n.1 (emphasis in original).) In sum, Plaintiffs assert in their brief that their claims actually "rest[] on conduct of federal law enforcement officers . . . [who] generally [do not] have absolute immunity." *Id.*

6

This new position that Plaintiffs take seems irreconcilable with their Complaint, which again, relies entirely on the Government's alleged procurement and prosecution of the two indictments against Plaintiffs. (*See generally* Compl. at 42–46.)[4] Still, in light of Plaintiffs' retraction of its reliance on any "prosecutorial decisions" (Dkt. No. 23 at 5 n.1), and "draw[ing] all reasonable inferences in favor of [Plaintiffs]," *Tandon*, 752 F.3d at 243, the Court is willing to adopt Plaintiffs' construction of their allegations. In doing so, the only conduct alleged in the Complaint that appears to provide a basis for Plaintiffs' claims is the conduct of EPA agent Walter Mugdan, who was responsible for the referral of Plaintiffs' CWA violations "to the Criminal Investigative Division . . . for indictment." (Compl. at 31.)

The Court turns now to consider whether the discretionary function exception applies to this alleged conduct, and concludes that both prongs of the *Berkovitz-Gaubert* test are satisfied, and that the discretionary function exception of the FTCA bars Plaintiffs' claims against the Government. First, Mugdan's conduct in referring Plaintiffs to the Criminal Investigative Division ("CID") appears to have involved "an element of judgment or choice," and Plaintiffs do not point to any "federal statute, regulation, or policy [that] specifically prescribes a course of action" Mugdan was required to follow in making a referral recommendation to the Criminal Investigative Division ("CID"). *Berkovitz*, 486 U.S. at 536–37. The decision to refer Plaintiffs' particular case for further criminal investigation was therefore within the discretion of Mugdan, because "all the components of [that] determination–whether, when, whom and how–reflect the

---

[4] To the extent that Plaintiffs challenge the decision to institute prosecution against them, their FTCA claims must be dismissed because "[p]rosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983); *see also Wang v. United States*, No. 01 Civ. 1326, 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001) (holding that prosecutorial decisions fall within the discretionary function exception).

decision-maker's judgment of how best to enforce compliance and to deter misconduct in others." *K.W. Thompson Tool Co. v. United States*, 836 F.2d 721, 729 (1st Cir. 1988) (dismissing a malicious prosecution claim brought against the United States arising from a criminal prosecution brought by EPA agents pursuant to the discretionary function exception). Thus, the first prong of the *Berkovitz-Gaubert* test is met because the decision to refer Plaintiffs' violations to the CID is quintessentially discretionary. *See Valdez v. United States*, No. 08 Civ. 4424, 2009 WL 2365549, at *7 (S.D.N.Y. July 31, 2009) ("[D]ecisions about how to conduct investigations fall squarely within the discretionary function exception.").

The second prong of the *Berkovitz-Gaubert* test is also satisfied, because Mugdan's decision to refer Plaintiffs' alleged CWA violations to the CID involved policy considerations "that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. As the Government argues, this sort of referral, which reflects "a judgment on whether and how to investigate," is a quintessentially discretionary function. (Dkt. No. 16 at 10.) Indeed, in determining whether to refer Plaintiffs' alleged CWA violations to the CID, Mugdan was inevitably called upon to make policy judgments regarding the seriousness of Plaintiffs' CWA violations, which in turn required his balancing of "the need to maximize compliance with [the CWA], and the efficient allocation of agency resources." *Berkovitz*, 486 U.S. at 538 (quoting *Varig Airlines*, 467 U.S. at 820). In balancing these factors, Mugdan was essentially making an "administrative decision[] grounded in social, economic, and political policy," one which this Court cannot and will not second-guess. *Varig Airlines*, 467 U.S. at 814; *see also Valdez*, 2009 WL 2365549, at *6 ("The judgments made as to what acts to perform in a federal investigation of criminal activity are the kinds of policy decisions that the discretionary function exception[] seeks to protect.") (collecting cases).

Nevertheless, Plaintiffs contend that the discretionary function exception does not apply here because the Mugdan's conduct as an agent of the EPA "was *illegal, unconstitutional, and . . . outside of the scope of the EPA's jurisdiction*," and "was designed and carried out merely to *coerce* compliance . . . with *EPA demands that the EPA had no jurisdiction* to make." (Dkt. No. 23 at 6.)

"It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority." *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975). The Court thus agrees with Plaintiffs that the discretionary function exception does not shield official conduct that is either unconstitutional or clearly outside the scope of a Government agent or agency's properly delegated authority, at least where that agent or agency "was acting so far beyond its authority that it could not have been exercising a function which could in any proper sense be called 'discretionary.'" *Birnbaum v. United States*, 588 F.2d 319, 329–33 (2d Cir. 1978) (internal quotation marks omitted) (holding that the discretionary function exception did not apply to the CIA's collection of intelligence with respect to domestic security matters because the CIA's statutory mandate was limited to collecting foreign intelligence), *partial abrogation recognized by Hurwitz v. United States*, 884 F.2d 684 (2d Cir. 1989); *see also Watson v. United States*, 179 F. Supp. 3d 251, 272 (E.D.N.Y. 2016) (holding that the discretionary function exception did not apply to ICE's arrest and detention of a U.S. citizen because the ICE's statutory authority to arrest and detain was limited to aliens).

Here, Plaintiffs fail to show that the EPA agent's conduct was "so far beyond its authority that it could not have been exercising a function which could in any proper sense be called 'discretionary.'" *Birnbaum*, 588 F.2d at 332 (citing *Hatahley v. United States*, 351 U.S. 173, 181

(1956)).  Plaintiffs allege that in light of the Supreme Court decision in *Rapanos v. United States*, 547 U.S. 715 (2006), the state of the law surrounding the CWA "*prior to and during* the time of the alleged wrongful conduct [was too vague to have] *clearly provided* that the EPA had jurisdiction" over Plaintiffs' land.  (Compl. at 27–31.)  Accordingly, Plaintiffs argue that the EPA agents' conduct was unlawful and beyond the scope of their delegated authority because the CWA was so vague such that the EPA's assertion of jurisdiction lacked any basis in law.  (Dkt. No. 23 at 5–6; *see also* Compl. at 28 ("When the law is unclear, there is, in effect, no law; and 'the rule of men' fills the void.").

Plaintiffs' argument is unpersuasive.  As an initial matter, Plaintiffs' suggestion that *Rapanos* left the outer boundaries of CWA jurisdiction open to interpretation does not establish that the CWA as a whole thereby became unconstitutionally vague such that its conferral of jurisdiction over waters of the United States to the EPA became void.  In fact, even in the wake of the *Rapanos* decision, federal courts have uniformly upheld enforcement of the CWA in circumstances where defendants have some knowledge of the possibility that their properties contain waters of the United States.  *See, e.g.*, *United States v. Lucas*, 516 F.3d 316, 327–28 (5th Cir. 2008); *United States v. Robertson*, 875 F.3d 1281, 1292–93 (9th Cir. 2017).  Here, Plaintiffs were on clear notice that the Transit Property was subject to the CWA:  The EPA had issued at least two cease and desist orders to Plaintiffs advising them of possible CWA violations on the Transit Property before initiating any of the criminal lawsuits giving rise to their tort claims. *See, e.g.*, *Acquest Transit LLC*, 2009 WL 2157005, at *10.  For all of their emphasis of the ambiguity surrounding the CWA following *Rapanos*, Plaintiffs fail to point to any authority holding that the EPA's enforcement of the CWA following *Rapanos* was a categorically unconstitutional exercise of authority.

Having determined that the CWA was not void for vagueness, the Court now asks whether the EPA's assertion of jurisdiction over the Transit Property and its subsequent enforcement actions was a proper exercise of its delegated CWA authority. The CWA prohibits the discharge of any pollutant into "the waters of the United States." 33 U.S.C. §§ 1311(a), 1362(7), (12). The EPA is charged with the responsibility and the authority to enforce the CWA. *See id.* § 1319. The EPA was thus acting within its statutory mandate when determining whether the Transit Property contained a body of water that was part of the "water of the United States." Once the EPA had determined that the Transit Property was subject to the CWA, it had the discretionary authority to faithfully enforce the CWA and to ensure Plaintiffs' compliance with the CWA. As such, the referral of Plaintiffs' CWA violations to CID for further investigation was a proper exercise of the EPA's statutory authority.[5]

Finally, a key premise of Plaintiffs' argument, namely that the EPA's jurisdictional determinations in the wake of *Rapanos* necessarily entailed complicated decision-making in an area of regulatory uncertainty, if accept as true, serves only to undermine Plaintiffs' contention that the EPA clearly acted outside the scope of its authority in a manner sufficient to defeat the Government's reliance on the discretionary function exception. Indeed, the difficult regulatory decision of delineating the extent of CWA enforcement to pursue following *Rapanos* confirms the extent to which the EPA's decision making was "grounded in social, economic, and political

---

[5] Indeed, at least one court to have reviewed the EPA's conclusion that the Transit Property was subject to the CWA in the wake of *Rapanos* concluded that EPA had acted within the scope of its CWA enforcement authority, and held that at least for purposes of a preliminary injunction, Acquest Transit had "failed to meet its burden of demonstrating that the Clean Water Act's provisions do not apply to [the Transit] Property." *Acquest Transit LLC*, 2009 WL 2157005, at *11. This court's holding at the very least buttresses the conclusion that the EPA did not so clearly step outside the bounds of its statutory authority in enforcing the CWA with respect to the Transit Property such that the discretionary function exception cannot apply here.

policy," which is precisely what the discretionary function exception intends to shield.[6] *Varig Airlines*, 467 U.S. at 814. Plaintiffs' conclusory statement that the EPA's jurisdiction is "*not clear*"—without specifying which provision of the Constitution or the CWA that Agent Mugdan's enforcement actions clearly violated—is insufficient to establish that the EPA has acted "so far beyond its authority that it could not have been exercising a function which could in any proper sense be called 'discretionary.'" *Birnbaum*, 588 F.2d 319, 33 (internal quotation marks omitted).

In conclusion, because the discretionary function exception shields the Government from any causes of action that Plaintiffs have asserted in their Complaint, the Complaint must be dismissed for lack of subject matter jurisdiction.[7]

---

[6] Plaintiffs' allegations that the EPA agents had ulterior motives behind their enforcement conduct do not defeat the application of the discretionary function exception, because this "exception is indifferent to the Government actor's motivation." *Wang*, 2001 WL 1297793, at *4.

[7] Plaintiffs suggest that applying the discretionary function exception under 28 U.S.C. § 2680(a) would conflict with the law-enforcement-officer proviso to 28 U.S.C. § 2680(h). (Dkt. No. 23 at 2–3.) The Court disagrees.

Section 2680(h) bars claims against the Government "arising out of," among other things, "malicious prosecution[ and] abuse of process . . . [,]" but has a proviso that waives immunity for these torts when committed by "law enforcement officers." 28 U.S.C. § 2680(h). Circuit courts appear to disagree over whether claims listed in the law-enforcement-officer proviso would be barred if they are based on the performance of discretionary functions within the meaning of § 2680(a). *Compare Medina v. United States*, 259 F.3d 220, 224–26 (4th Cir. 2001), *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994), *and Gray*, 712 F.2d at 507–08, *with Nguyen v. United States*, 556 F.3d 1244, 1257 (11th Cir. 2009), *and Sutton v. United States*, 819 F.2d 1289, 1297 (5th Cir. 1987).

The Court agrees with the majority of these Circuits that Plaintiffs "must clear the § 2680(a) discretionary function hurdle" before they can proceed on their intentional torts claims arising from law enforcement officers' misconduct under § 2680(h). *Medina*, 259 F.3d at 226. Indeed, the Second Circuit has relied on the discretionary function exception to dismiss false arrest and malicious prosecutions claims arising from law enforcement officers' alleged misconduct brought against the Government under the FTCA, without requiring the Government to overcome the hurdle of the law-enforcement-officer proviso to § 2680(h). *Wang v. United States*, 61 F. App'x 757, 758–59 (2d Cir. 2003); *see also Valdez*, 2009 WL 2365549, at *4–7.

12

**IV.     Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 15 and to close this case.

SO ORDERED.

Dated:  March 29, 2019
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

Because the Court has already concluded that Plaintiffs' claims must be dismissed under the discretionary function exception, the Court need not discuss whether the law-enforcement-officer proviso would apply here.